THE STATE EX REL. ST. LOUIS COUNTY GAS COMPANY v. PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI, Appellant.

Division One, July 30, 1926.

**1. PUBLIC SERVICE COMMISSION: Change of Schedule Rates.** A schedule of rates and charges filed and published by a gas corporation in accordance with the provisions of the statute (Sec. 10478, R. S. 1919) acquires the force and effect of law, and as such is binding upon the corporation filing it

and the public which it serves, and upon the Public Service Commission, until modified or changed by a new or supplementary schedule, filed voluntarily by the corporation or by order of the Commission.

**2. ———: ———: Rules and Regulations: Modification for Particular Individuals.** Rules and regulations of a gas corporation relating to the extension of its mains are integral parts of its schedule of rates and charges, and if unjust and unreasonable the Public Service Commission may order the schedule modified in respect to them, but it cannot set them aside as to certain individuals and maintain them in force as to. the public generally.

**3. ———: ———: ———: Violation to Accommodate Individuals.** The Public Service Commission cannot in specific instances compel a gas corporation to make extensions of its mains and furnish service to complaining individuals in violation of the rules regulating rates and charges which are on file with it and have its approval, express or implied, and which are applicable to the public as a whole.

Corpus Juris-Cyc. References: **Gas**, 28 C. J., Section 25, p. 565, n. 8 New; Section 26, p. 565, n. 12 New, 13; Section 34, p. 572, n. 24 New.

Appeal from Circuit Court of City of St. Louis.—*Hon. Franklin Miller*, Judge.

AFFIRMED.

*D. D. McDonald* and *J. P. Painter* for Public Service Commission.

(1) The Public Service Commission is authorized and empowered to hear and determine complaints that rules and regulations of gas corporations are unjust, unreasonable, unjustly discriminatory or unduly preferential; to hear and determine complaints that the property, equipment, etc., of gas companies are unsafe, insufficient or inadequate. Par. 5, Sec. 10478, R. S. 1919. (2) Public Service Commission is expressly authorized "to order reasonable improvements and extensions of the works . . . pipe . . . and other reasonable devices, apparatus and property of gas corporations." Par. 2, Sec. 10478, R. S. 1919. (3) Maplewood being within the territory the gas company professes to serve, the gas company may be required to serve its residents, because it is its duty within reasonable limitations, to serve all in such territory who apply. State ex rel. Power Co. v. Pub. Serv. Comm., 287 Mo. 522; Woodhaven Gaslight Co. v. Deehan, 153 N. Y. 538; New York Gas Co. v. McCall, 245 U. S. 345. (4) Corporations which devote their property to a public use may not pick and choose, serving only the portions of the territory covered by their franchise which it is presently profitable for them to serve and restricting the development of the remaining portions by leaving their inhabitants in discomfort without the service which they alone can render. People ex rel. New York Gas Co. v. McCall, 245 U. S. 345; State ex rel. Power Co. v. Pub. Serv. Comm., 287 Mo. 522. (5) The court has no power to substitute its own judgment of what is reasonable in place of the determination of the Public Service Commission, and

it can only annul the order of the Commission for the violation of some rule of law. People ex rel. New York Gas Co. v. McCall, 219 N. Y. 84, 245 U. S. 345; State ex rel. Woodhaven Gas Co. v. Pub. Serv. Comm., 1925E, P. U. R., p. 827.

*Rassieur & Goodwin* for respondent.

(1) Schedules of rules and regulations when duly filed with the Public Service Commission have the force of law, and must until lawfully changed, be observed by the utility, the public and the Commission. R. S. 1919, sec. 10478, par. 12; L. & N. Railroad Co. v. Maxwell, 237 U. S. 94, 59 L. Ed. 853; See decisions under Interstate Commerce Act, 4 Fed. Stat. Ann. (2 Ed.) p. 415. (2) To exempt particular individuals from the application of published schedules is an unlawful discrimination. R. S. 1919, sec. 10477, pars. 2, 3; sec. 10478, par. 12; A. T. & S. F. Ry. Co. v. P. S. C., 192 S. W. 460; Northern Wood Products Co. v. Town of Jacobs, Pub. Utilities Rep. Ann. 1924 A, p. 193. (3) Any order of the Public Service Commission that discriminates in favor of certain individuals is void. A. T. & S. F. Ry. Co. v. P. S. C., 192 S. W. 460; State ex rel. St. Joseph v. Busby, 274 S. W. 1067. In reviewing the reasonableness of an order of the Public Service Commission this court will review the entire evidence and make its own findings, in the same manner as it reviews decrees in equity. State ex rel. S. W. Bell Tel. Co. v. P. S. C., 233 S. W. 425.

RAGLAND, P. J.—This is an appeal by the Public Service Commission from a judgment of the Circuit Court of the City of St. Louis, reversing an order of the Public Service Commission, entered upon the complaint of Jesse Harnage et al. against St. Louis County Gas Company. A general outline of the facts, sufficient for an understanding of the question presented for decision, may for the most part be gathered from the following portions of the Commission's report:

"1. Jesse L. Harnage, Simon Fargo and Harry Leo joined in a complaint against the St. Louis County Gas Company which is engaged in manufacturing and distributing gas to the inhabitants of St. Louis County in this State. Complainants seek to require the defendant to extend its gas mains four hundred feet to reach their separate premises on Folk Avenue in the city of Maplewood, for supplying them with gas.

"After answer filed by defendant, the case was heard before two members of the Commission at the city of St. Louis, on the 25th day of September, 1924, and submitted for decision upon the evi-

dence and a typewritten memorandum filed in behalf of the complainants.

"2. Complainants before filing this complaint requested defendant to furnish them gas service at their premises aforesaid, which defendant offered to do on the 23rd day of June, 1924, under the terms of defendant's rules governing extensions of its mains which has been duly filed with the Public Service Commission. The complainants refused to accept service on the terms offered by defendant and say the said rules of defendant relating to extensions of its mains are unreasonable.

"Complainants offer to pay the expenses of equipping their premises with pipes for gas service from the curb line and insist that all other costs of furnishing equipment for their service should be borne by defendant. The total cost of furnishing and installing the equipment necessary for serving complainants with gas to the curb line, including meters, was estimated to be $259. The defendant in accordance with its rules offered to expend $184 of the foregoing amount upon complainants depositing with it the remainder $75, said $75 to be subject to refund to complainants under either of the following methods as provided by defendant's rules:

"'A. The customers may guarantee that the annual revenue received by the company from the extension shall amount in total to forty per cent of its actual cost, whereupon the company shall refund to the customers at the end of each year after its completion that portion of the annual revenue from the extension in excess of twenty per cent of its cost until the total amount of the deposit has been refunded.

"'In the event the annual revenue received by the company from the extension shall not equal the amount guaranteed by the customers, the company shall charge the deficiency of actual revenue below guaranteed revenue against the customer's deposit, reducing to that extent the amount to be refunded.

"'B. The company will refund to the customers the following amounts for each new customer secured on the extension within the first five years after its completion.

"'a. For each general illuminating and fuel service customer, $30.

"'b. For each industrial fuel service or resident heating service customer, $150; providing that the sum of such refund shall not exceed the total amount deposited.

"'The customers shall designate the plan under which they desire refunds made at the time of making deposit for the extension, but shall have the option at any time within six months after the completion of the extension of selecting any alternative plan, which shall thereupon become retroactive if selected in the beginning.'

"The defendant, under its rules, stands ready to furnish and install one hundred feet of mains for each new consumer of gas. The said rules of defendant have been in force for several years."

The rules above referred to were parts of the schedule of "rules and regulations relating to rates, charges, or services used or to be used and all general privileges and facilities granted or allowed by such gas corporation," the St. Louis Gas Company, filed by it with the Public Service Commission on July 15, 1920, effective August 15, 1920, and which without change or modification the Commission had permitted to become and remain in full force and effect up to and including the time of the hearing under review.

The report, after discussing certain evidentiary facts and expressing the opinion that they showed that the Gas Company could make the extensions "without burdening its present customers or without incurring financial loss," concluded:

"As applied to the facts in this case the defendant's rule requiring a deposit from complainants before defendant will extend its line to serve them is unreasonable.

Therefore, an order will issue requiring defendant to install an extension of its mains for gas service to connect with the premises of complainants' at the curb line."

The Public Service Commission Law clearly confers upon the Commission the power to compel a gas corporation to "furnish and provide such service, instrumentalities and facilities as shall be safe and adequate and in all respects just and reasonable" (Sec. 10477, R. S. 1919); "to order reasonable improvements and extensions of the works . . . of gas corporations" (Subdivision 2, Section 10478); and to "determine and prescribe the just and reasonable rates and charges thereafter to be in force for the service to be furnished" (Subdivision 5, Section 10478). Its power in these respects is not controverted. The sole question presented for decision on the facts of this case is whether the Commission may in specific instances compel a gas corporation to make extensions and furnish service in violation of the rules relating to rates and charges which are on file with it and have its approval, express or implied, and which are applicable to the public as a whole. The applicatory law is found in Subdivision 12 of said Section 10478. It follows:

"Have power to require every gas corporation . . . to file with the commission and to print and keep open to public inspection schedules showing all rates and charges made, established or enforced or to be charged or enforced, all forms of contract or agreement and all rules and regulations relating to rates, charges or service used or to be used, and all general privileges and facilities granted or allowed by such gas corporation. . . . Unless the commission otherwise orders, no change shall be made in any rate

or charge, or in any form of contract or agreement, or any rule or regulation relating to any rate, charge or service, or in any general privilege or facility, which shall have been filed and published by a gas corporation . . . in compliance with an order or decision of the commission, except after thirty days' notice to the commission and publication for thirty days as required by order of the commission, which shall plainly state the changes proposed to be made in the schedule then in force and the time the change will go into effect. The commission for good cause shown may allow changes without requiring the thirty days' notice under such conditions as it may prescribe. No corporation or municipality shall charge, demand, collect or receive a greater or less or different compensation for any service rendered or to be rendered than the rates and charges applicable to such services as specified in its schedule and in effect at the time; nor shall any corporation or municipality refund or remit in any manner or by any device any portion of the rates or charges so specified, nor to extend to any person or corporation any form of contract or agreement, or any rule or regulation, or any privilege or facility, except such as are regularly and uniformly extended to all persons and corporations under like circumstances.''

A schedule of rates and charges filed and published in accordance with the foregoing provisions acquires the force and effect of law; and as such it is binding upon both the corporation filing it and the public which it serves. It may be modified or changed only by a new or supplementary schedule, filed voluntarily, or by order of the Commission. Such is the construction which has been universally put upon analogous provisions of the Interstate Commerce Act (Louisville Ry. Co. v. Maxwell, 237 U. S. 94; Gulf Ry. Co. v. Hefley, 158 U. S. 98); and we have so ruled with respect to similar provisions of our Public Service Commission Law relating to telegraph companies. [State ex rel. v. Public Service Commission, 264 S. W. l. c. 671-2.] If such a schedule is to be accorded the force and effect of law, it is binding not only upon the utility and the public, but upon the Public Service Commission as well.

The general purpose of the statutory provision above referred to is to compel the utility to furnish service to all the inhabitants of the district which it professes to serve at reasonable rates and without discrimination. The methods by which these results are to be obtained are clearly and definitely prescribed. ''Whenever the commission shall be of the opinion, after a hearing had upon its own motion or upon complaint, that the rates or charges or the acts or regulations of any such . . . corporation . . . are unjust, unreasonable, unjustly discriminatory or unduly preferential, or in any wise in violation of any provision of law, the commission shall determine and prescribe the just and reasonable rates and charges

thereafter to be in force for the service to be furnished.'' The rules and regulations of the St. Louis Gas Company as to extensions are integral parts of its schedule of rates and charges. If they are unjust and unreasonable the Commission, after a hearing, as just referred to, may order the schedule modified in respect to them. But it cannot set them aside as to certain individuals and maintain them in force as to the public generally. The Gas Company cannot "extend to any person or corporation any form of contract or agreement, or any rule or regulation, or any privilege or facility, *except such as are regularly and uniformly extended to all persons and corporations under like circumstances.''* Neither can the Public Service Commission.

The judgment of the circuit court is affirmed.

All concur, except *Graves, J.,* absent.